Name / Nombre: Artem Semenov

A Number / Número A: 249 379 315

Address / Dirección: Golden State Annex, 611 Frontage Rd, McFarland, CA, 93250

**PRO SE**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

FILED
MAY 21 2025
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____pe_____
DEPUTY CLERK

Artem Semenov
[Full Name / Nombre Completo]

(A# 249-379-315)

Petitioner,

v.

Warden of the Golden State Annex Detention Facility, Current or Acting Field Office Director, San Francisco Field Office, United States Immigration and Customs Enforcement; Current or Acting Director, United States Immigration and Customs Enforcement; Current or Acting Secretary, United States Department of Homeland Security; and Current or Acting United States Attorney General,

Respondents.

Case No. 1:25-CV-00598-CDB(HC)

**Petition for Writ of Habeas Corpus**

### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to remedy Petitioner's unlawful detention by Respondents, as follows:

1

# INTRODUCTION

1. Petitioner[1] is currently detained by Immigration and Customs Enforcement ("ICE") at the <u>Golden State Annex</u> [*escriba el nombre del centro de detención donde está detenido*] detention center pending removal proceedings.

2. Petitioner has been detained in immigration custody for over <u>8</u> [*escriba el número de meses que ha estado detenido*] months even though no neutral decisionmaker—whether a federal judge or immigration judge ("IJ")—has conducted a hearing to determine whether this lengthy incarceration is warranted based on danger or flight risk.

3. Petitioner's prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment.

4. Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus, determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

5. Alternatively, Petitioner requests that the Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an IJ where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the IJ shall order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

---

[1] Petitioner respectfully requests that the Court use his initials, rather than his full last name, in any opinion in his case, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf; *see also Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050 n.1 (N.D. Cal. Apr. 14, 2021).

## JURISDICTION

6.  Petitioner is detained in the custody of Respondents at <u>Golden State Annex</u> *[escriba el nombre del centro de detención donde está detenido]* detention center.

7.  This action arises under the Due Process Clause of the Fifth Amendment of the U.S. Constitution. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 2241 (habeas corpus); U.S. Const. art. I, § 2; (Suspension Clause); and 5 U.S.C. § 702 (Administrative Procedure Act. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

8.  Congress has preserved judicial review of challenges to prolonged immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 839-841 (2018) (holding that 8 U.S.C. §§ 1226(e), 1252(b)(9) do not bar review of challenges to prolonged immigration detention); *see also id.* at 876 (Breyer, J., dissenting). ("8 U.S.C. § 1252(b)(9) . . . by its terms applies only with respect to review of an order of removal") (internal quotation marks and brackets omitted).

## VENUE

9.  Venue is proper in this District because this is the district in which Petitioner is confined. *See Doe v. Garland,* 109 F.4th 1188, 1197-99 (9th Cir. 2024).

## REQUIREMENTS OF 28 U.S.C. § 2243

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If the Court issues an OSC, it must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ affords "*a swift and imperative remedy* in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis

added); *see also Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (explaining that habeas statute requires expeditious determination of petitions).

## PARTIES

12. Petitioner is a noncitizen currently detained by Respondents pending ongoing removal proceedings.

13. Respondent Warden of the Golden State Annex [*escriba el nombre del centro de detención donde está detenido*] Detention Facility is Petitioner's immediate custodian at the facility where Petitioner is detained. *See Doe*, 108 F.4th at 1194-97.

14. Respondent Secretary of the U.S. Department of Homeland Security ("DHS"), an agency of the United States, is responsible for the administration of the immigration laws. 8 U.S.C. § 1103(a). They are a legal custodian of Petitioner. They are named in their official capacity.

15. Respondent Acting or Current Attorney General of the United States is the most senior official in the U.S. Department of Justice ("DOJ"). They have the authority to interpret the immigration laws and adjudicate removal cases. They delegate this responsibility to the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA"). They are named in their official capacity.

16. Respondent Acting or Current Field Office Director of the San Francisco ICE Field Office is responsible for the San Francisco Field Office of ICE with administrative jurisdiction over Petitioner's case. They are a legal custodian of Petitioner and are named in their official capacity.

17. Respondent Acting or Current Director of ICE is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants. They are a legal custodian of Petitioner and are named in their official capacity.

## STATEMENT OF FACTS

18. Petitioner is a noncitizen currently detained by Respondents pending immigration removal proceedings. Petitioner is pursuing the following claims in removal proceedings [*escriba*

*todos los aplicaciones de alivio que usted esta presentando en su caso de deportacion]:*
Asylum, Withholding of Removal, and Convention Against Torture

19. Petitioner has been detained in DHS custody since 08/2024
[*escriba el mes y año en que comenzó su detención por ICE*].

20. Petitioner has not been provided a bond hearing before a neutral decisionmaker to determine whether their prolonged detention is justified based on danger or flight risk.

21. Pursuant to 8 U.S.C. § 1226(c), the Immigration Court lacks jurisdiction and authority to provide Petitioner with a bond hearing to determine whether Petitioner's detention is justified. There is no statutory or regulatory pathway for Petitioner to seek a bond hearing before a neutral decisionmaker.

22. Absent intervention by this Court, Petitioner cannot and will not be provided with a bond hearing by a neutral decisionmaker to assess the propriety of Petitioner's continued detention.

23. Additional facts that support Petitioner's entitlement to relief are [*escriba datos adicionales sobre su detención que desee que el juez sepa*]:
I asked for bond hearing after 6 months of detention, my attorney and sponsor were not connected, even in 1 hour before court started, also my bond hearing started in 30 minutes earlier. Judge desision was that court doesn't have jurisdiction to give me bond.
I asked for parole several times as well, back in Otai Mesa, ICE there gave me "security risk" without any particular reason. Nobody checked my background I think even when I gave all of my

5

finger prints. I don't have any criminal record, I'm in blue uniform, never received criminal points while detained, never served in army as well. I'm only 20 years old, ICE does have my passport. I'm supposed to have individual court on February 6th, in Otai Mesa detention center, but ICE transferred me on January 17th in Golden State Annex detention center, and jurisdiction of my court changed. It started from Master court all over again, and now, I think it will last, with all appeals if there will be any, at least for 10-12 months.

I feel deep depression, because I can't live my normal life. I can't go back in my home country, because of my political opinion I'm persecuted in Russia, and I can't be with family that currently living in USA. I'm 20 years old, and I want to study and work, I want to have social life. I'm detained already for 8 months, I never had any criminal background, also my sponsor is my older sister and she is citizen.

Check additional blank for more information.

### LEGAL BACKGROUND

24. "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the

6

Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id.* at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or capricious").

25.  Due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528.

26.  Due process requires that the government provide bond hearings to noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law." *Jennings*, 138 S. Ct. at 862 (Breyer, J., dissenting) (internal quotation marks omitted). While the Supreme Court upheld the mandatory detention of a noncitizen under Section 1226(c) in *Demore*, it did so based on the petitioner's concession of deportability and the Court's understanding at the time that detentions under Section 1226(c) are typically "brief." *Demore*, 538 U.S. at 522 n.6, 528. Where a noncitizen has been detained for a prolonged period or is pursuing a substantial defense to removal or claim to relief, due process requires an individualized determination that such a significant deprivation of liberty is warranted. *Id.* at 532 (Kennedy, J., concurring) ("[I]ndividualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified"); *see also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (holding that detention beyond the "initial commitment" requires additional safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) (holding that "lesser safeguards may be appropriate" for "short-term confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (holding that, in the

Eighth Amendment context, "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards"); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (holding that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under section 1226(c)) (internal quotation marks omitted).

### A. Detention That Exceeds Six Months Without A Bond Hearing Is Unconstitutional.

27. Detention without a bond hearing is unconstitutional when it exceeds six months. *See Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under Section 1226(c), which last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1091 (9th Cir. 2022) ("[O]nce the [noncitizen] has been detained for approximately six months, continuing detention becomes prolonged" (cleaned up) (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011))); *Rodriguez v. Nielsen*, Case No. 18-CV-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) ("[D]etention becomes prolonged after six months and entitles [Petitioner] to a bond hearing").

28. The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continued incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term." *Duncan v. Louisiana*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for confinement without

8

individualized inquiry for civil commitment). The Court has likewise recognized the need for bright line constitutional rules in other areas of law. *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (holding that 14 days must elapse following invocation of *Miranda* rights before re-interrogation is permitted); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (holding that a probable cause hearing must take place within 48 hours of warrantless arrest).

### B. Even Absent A Bright-Line Six-Month Standard, An Individualized Bond Hearing Is Required When Detention Becomes Unreasonably Prolonged.

29. Petitioner's detention, without *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test. Alternatively, Petitioner prevails under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020).

30. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 138 S. Ct. at 860 (Breyer, J., dissenting) (observing that class members, numbering in the thousands, had been detained "on average one year" and some had been detained for several years). For noncitizens who have some criminal history, their immigration detention often dwarfs the time spent in criminal custody, if any. *Id.* ("between one-half and two-thirds of the class served [criminal] sentences less than six months").

31. Petitioner faces severe hardships while detained by ICE. Petitioner is held in a locked down facility, with limited freedom of movement and access to Petitioner's family or support network: "[T]he circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting); *accord Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015); *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218, 1221 (11th Cir. 2016). "And in some cases the conditions of their confinement are inappropriately poor" including, for example, "invasive procedures, substandard care, and mistreatment, *e.g.*, indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case

of one detainee, a multiday lock down for sharing a cup of coffee with another detainee." *Jennings*, 138 S. Ct at 861 (Breyer, J., dissenting) (citing Press Release, Off. of Inspector Gen., Dept. of Homeland Sec., *DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities* (Dec. 14, 2017)); *see also* Tom Dreisbach, *Government's own experts found 'barbaric' and 'negligent' conditions in ICE detention*, NPR (Aug. 16, 2023, 5:01 AM) (reporting on the "'negligent' medical care (including mental health care), 'unsafe and filthy' conditions, racist abuse of detainees, inappropriate pepper-spraying of mentally ill detainees and other problems that, in some cases, contributed to detainee deaths" contained in inspection reports prepared by experts from the Department of Homeland Security's Office for Civil Rights and Civil Liberties after examining detention facilities between 2017 and 2019). Individuals at Golden State Annex Detention Facility have described receiving food contaminated with insects (including cockroaches, flies, and spiders), hair, and other foreign objects. *See* California Collaborative for Immigrant Justice, *Starving for Justice: The Denial of Proper Nutrition in Immigration Detention*, at p. 7 (April 2022), *available at* https://www.ccijustice.org/_files/ugd/733055_c43b1cbbdda341b894045940622a6dc3.pdf. At Mesa Verde Detention Facility, over 80% of detained individuals who responded to one survey said they had received expired food. *Id.*

32. The *Mathews* test for procedural due process claims balances: (1) the private interest threatened by governmental action; (2) the risk of erroneous deprivation of such interest and the value of additional or substitute safeguards; and (3) the government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Sho v. Current or Acting Field Off. Dir.*, No. 1:21-CV-01812 TLN AC, 2023 WL 4014649, at *3 (E.D. Cal. June 15, 2023), *report and recommendation adopted*, No. 1:21-CV-1812-TLN-AC, 2023 WL 4109421 (E.D. Cal. June 21, 2023) (applying *Mathews* factors to a habeas petitioner's due process claims and collecting cases doing the same). Here, each factor weighs in Petitioner's favor, requiring this Court to promptly hold a hearing to evaluate whether the government can justify their ongoing detention.

33. First, Petitioner indisputably has a weighty interest in their liberty, the core private interest at stake here. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment ... lies at the heart of the liberty [the Due Process Clause] protects."). Petitioner, who is being held in "incarceration-like conditions," has an overwhelming interest here, regardless of the length of his immigration detention, because "any length of detention implicates the same" fundamental rights. *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020).

34. Second, Petitioner will suffer the erroneous risk of deprivation of their liberty without an individualized evidentiary hearing. The risk of erroneous deprivation of their liberty is high, as they have been detained since __08/2024__ [*escriba el mes y año en que comenzó su detención por ICE*] without any evaluation of whether the government can justify detention under their individualized circumstances. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf*, 634 F.3d at 1092. Conversely, "the probable value of additional procedural safeguards—an individualized evaluation of the justification for his detention—is high, because Respondents have provided virtually no procedural safeguards at all." *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, *3 (N.D. Cal. Jan. 30, 2020) (granting habeas petition for person who had been detained for one year without a bond hearing).

35. Third, the government's interest is very low in continuing to detain Petitioner without providing any neutral review. *See Mathews*, 424 U.S. at 335. The specific interest at stake here is not the government's ability to continue to detain Petitioner, but rather the government's ability to continue to detain them for months on end without any individualized review. *See Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022). The cost of providing an individualized inquiry is minimal. *See Henriquez*, 2022 WL 2132919, at *5. The government has repeatedly conceded this fact. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019); *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019);

*Marroquin Ambriz*, 420 F. Supp. 3d at 964.

36. In sum, the *Mathews* factors establish that Petitioner is entitled to an evidentiary hearing before a neutral adjudicator. Unsurprisingly, courts applying these standards in this District and Circuit have repeatedly held that prolonged detention without a hearing before a neutral adjudicator violates procedural due process for individuals who were held under the same detention statute. See, e.g., *Romero Romero v. Wolf*, No. 20-CV-08031-TSH, 2021 WL 254435, at *2, *5 (N.D. Cal. Jan. 26, 2021) (holding that the petitioner's detention under § 1226(c) of just over one year without a custody hearing was "not compatible with due process" and granting habeas); *Jimenez*, 2020 WL 510347, at *1, *2, *4 (holding that the petitioner's detention under § 1226(c) of just over one year without a custody hearing violated his due process rights and granting habeas); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *1, *5 (N.D. Cal. Jan. 25, 2019) (holding that the petitioner's detention under § 1226(c) for just over one year without a custody hearing violates his due process rights and granting habeas). This Court should so hold as well.

37. *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not disturb this result. In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to hold that the detention of a noncitizen detained under a different detention statute, 8 U.S.C. § 1226(a), did not violate procedural due process. 53 F.4th at 1195. Unlike § 1226(c), § 1226(a) mandates that detained individuals receive an individualized bond hearing at the outset of detention and provides for further bond hearings upon a material change in circumstances. *See* 8 C.F.R. § 1003.19€. The panel's decision in *Rodriguez Diaz* was predicated on the immediate and ongoing availability of this administrative process under § 1226(a). 53 F.4th at 1202 ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions . . . ."). Unlike the petitioner in *Rodriguez Diaz*, Petitioner has no statutory access to individualized review of his detention.

38. Alternatively, courts that apply a reasonableness test have considered four non-exhaustive factors in determining whether detention is reasonable. *German Santos v. Warden*

*Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-22 (3d Cir. 2020). The reasonableness inquiry is "highly fact-specific." *Id.* at 210. "The most important factor is the duration of detention." *Id.* at 211; *see also Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *1, *5 (N.D. Cal. Jan. 25, 2019) (concluding that the petitioner's detention under § 1226(c) for just over one year without a custody hearing weighed strongly in favor of finding detention unreasonable, and violated his due process rights and granting habeas). Duration is evaluated along with "all the other circumstances," including (1) whether detention is likely to continue, (2) reasons for the delay, and (3) whether the conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211.

39. As noted, Petitioner has been detained for a substantial length of time, *supra* ¶ 20 and Petitioner's detention is likely to continue as Petitioner asserts their right to seek immigration relief, *supra* ¶ 19. Noncitizens should not be punished for pursuing "legitimate proceedings" to seek relief. *See Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("[I]t ill suits the United States to suggest that [Petitioner] could shorten his detention by giving up these rights and abandoning his asylum application."). Thus, courts should not count a continuance against the noncitizen when they obtained it in good faith to prepare their removal case, including efforts to obtain counsel. *See Hernandez Gomez*, 2023 WL 2802230, at *4 ("The duration and frequency of these requests [for continuances] do not diminish his significant liberty interest in his release or his irreparable injury of continued detention without a bond hearing."). Moreover, Petitioner's confinement and experiences at a facility operated by a private, for-profit prison contractor, demonstrate that their conditions of confinement are not meaningfully different from those of criminal punishment. *See supra* ¶¶ 10, 24, 32.

### C. At Any Hearing, The Government Must Justify Ongoing Detention By Clear And Convincing Evidence.

40. At a bond hearing, due process requires certain minimum protections to ensure that a noncitizen's detention is warranted: the government must bear the burden of proof by

clear and convincing evidence to justify continued detention, taking into consideration available alternatives to detention; and, if the government cannot meet its burden, the noncitizen's ability to pay a bond must be considered in determining the appropriate conditions of release.

41. To justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd on other grounds by Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 213 L. Ed. 2d 102 (2022) ("*Jennings*'s rejection of layering [the clear and convincing burden of proof standard] onto § 1226(a) *as a matter of statutory construction* cannot . . . undercut our constitutional due process holding in *Singh*."); *Sho*, 2023 WL 4014649, at *5 (applying *Singh* and holding that the government shall bear the burden in a constitutionally required bond hearing in the § 1226(c) context) *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (same); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023) (same); *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023) (same); *Martinez Leiva v. Becerra*, No. 23-CV-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023); *I.E.S. v. Becerra*, No. 23-CV-03783-BLF, 2023 WL 6317617, at *10 (N.D. Cal. Sept. 27, 2023) (same); *Singh Grewal v. Becerra*, No. 23-CV-03621-JCS, 2023 WL 6519272, at *8 (N.D. Cal. Oct. 4, 2023) (same); *Gomez v. Becerra*, No. 23-CV-03724-JCS, 2023 WL 6232236, at *9 (N.D. Cal. Sept. 25, 2023) (same); *Henriquez v. Garland*, No. 23-CV-01025-AMO, 2023 WL 6226374, at *4 (N.D. Cal. Sept. 25, 2023) (same); *Rodriguez Picazo v. Garland*, No. 23-CV-02529-AMO, 2023 WL 5352897, at *7 (N.D. Cal. Aug. 21, 2023) (same).

42. Where the Supreme Court has permitted civil detention in other contexts, it has relied on the fact that the Government bore the burden of proof by at least clear and convincing evidence. *See United States v. Salerno*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention after a "full-blown adversary hearing" requiring "clear and convincing evidence" and "a neutral decisionmaker"); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down

civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, *inter alia*, they placed burden on detainee).

43. The requirement that the government bear the burden of proof by clear and convincing evidence is also supported by application of the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" *See Rodriguez Diaz*, 53 F.4th at 1207 (citing *Singh*, 638 F.3d at 1208). Second, the risk of error is great where the government is represented by trained attorneys and detained noncitizens are often unrepresented and may lack English proficiency. *See Santosky v. Kramer*, 455 U.S. 745, 763 (1982) (requiring clear and convincing evidence at parental termination proceedings because "numerous factors combine to magnify the risk of erroneous factfinding" including that "parents subject to termination proceedings are often poor, uneducated, or members of minority groups" and "[t]he State's attorney usually will be expert on the issues contested"). Moreover, detained noncitizens are incarcerated in prison-like conditions that severely hamper their ability to obtain legal assistance, gather evidence, and prepare for a bond hearing. *See supra* ¶ 32. Third, placing the burden on the government imposes minimal cost or inconvenience to it, as the government has access to the noncitizen's immigration records and other information that it can use to make its case for continued detention.

### D. Due Process Requires Consideration Of Alternatives To Detention.

44. Due process also requires consideration of alternatives to detention. The primary purpose of immigration detention is to ensure a noncitizen's appearance during civil removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979) (civil pretrial detention may be unconstitutionally punitive if it is excessive in relation to its legitimate purpose). ICE's alternatives to detention program—the Intensive Supervision Appearance Program—has achieved extraordinary success in ensuring

appearance at removal proceedings, reaching compliance rates close to 100 percent. *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). Thus, alternatives to detention must be considered in determining whether prolonged incarceration is warranted.

45. Due process likewise requires consideration of a noncitizen's ability to pay a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if the individual's 'appearance at trial could reasonably be assured by one of the alternate forms of release.'" *Hernandez*, 872 F.3d at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)). Therefore, when determining the appropriate conditions of release for people detained for immigration purposes, due process requires "consideration of financial circumstances and alternative conditions of release." *Id.*; *see also Martinez v. Clark*, 36 F.4th 1219, 1231 (9th Cir. 2022) ("While the government had a legitimate interest in protecting the public and ensuring the appearance of noncitizens in immigration proceedings, we held [in *Hernandez*] that detaining an indigent alien without consideration of financial circumstances and alternative release conditions was 'unlikely to result' in a bond determination 'reasonably related to the government's legitimate interests.' (citation omitted).").

## CLAIM FOR RELIEF

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

46. Petitioner re-alleges and incorporates by reference the paragraphs above.

47. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

48. To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, taking into account whether alternatives to detention could sufficiently mitigate that risk.

49. For these reasons, Petitioner's ongoing prolonged detention without a hearing violates due process.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Issue a Writ of Habeas Corpus, hold a hearing before this Court if warranted, determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release (with appropriate conditions of supervision if necessary), taking into account Petitioner's ability to pay a bond;

3) In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the immigration judge order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond;

4) Issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment;

5) Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6) Grant such further relief as the Court deems just and proper.

| | |
|---|---|
| 04.22.2025 | Artem Semenov |
| Date [*Fecha*] | Printed Name [*Nombre Impreso*] |
| | *Ce/* |
| | Signature [*Firma*] |

Detained in ICE Custody at: [check one / marque uno]

☐  **Mesa Verde Detention Facility**, 425 Golden State Ave, Bakersfield, CA 93301

☑  **Golden State Annex**, 611 Frontage Road, McFarland, CA 93250